Good morning. Please be seated. Welcome to the Ninth Circuit. Judge Gould and I are pleased to welcome our colleague, Judge Lasnik, from the Western District of Washington. Thank you so much. Sitting by designation, as he has before. With that, the first case for argument this morning is United States v. Godoy-Machuca. Good morning, Your Honors. Mike Bresnahan representing Alfredo Godoy-Machuca. May it please the Court, I want to spend just a second correcting a couple of things in my brief so the record is clear. United States v. Nguyen, N-G-U-Y-E-N, no longer stands for the proposition that appeal waivers do not encompass appeals from motions to withdraw pleas generally. Preparing for oral argument, I noticed that Rahman, R-E-H-M-A-N, had clarified that. However, I believe that Rahman and Geronimo, both cited in both sides' briefs, did leave viable appeals from motions to withdraw pleas based on ineffective assistance of counsel and pleas that are not knowing and voluntary. Because in both of those cases, this Court went on to analyze, after determining that appeal waivers did not allow appeals from motions to withdraw a plea, they went on to analyze whether those pleas were voluntary and intelligent. So, second item on page 19 of the report. And which case are you referring to? Is that? Well, as I said, Rahman clarified whether Nguyen – Right. But the second case you said where they went on to analyze – That was Geronimo, Your Honor. Oh, Geronimo. And that is cited in the brief. Right. So the second item, real quickly. Page 19 of the reply brief should read, last sentence should read, quote, failing to advise, unquote, rather than, quote, advising. And then finally, with respect to the argument regarding whether we can – I should say the claim that the from Rule 11d-1 motions and abuse of discretion for appeals from Rule 11d-2b motions. I didn't make that clear in my brief. So let me start with what I think is our strongest argument. That's a good place to start, Otis. Thank you. Our strongest claim is I believe defense counsel is ineffective in failing to accurately and timely inform Godoy that the government was recommending a consecutive sentence. But when did she know that? Pardon me? When was that clear that they were recommending consecutive rather than concurrent? Was it taken care of prior to the plea? As far as I know, it wasn't clear to Godoy at any point in time until the judge began rendering sentence. I mean, that's his claim. To my knowledge, or I think the record supports the notion that Godoy did not read either the government's or his own sentencing memorandum. And his own attorney, after Godoy tried to withdraw from the plea agreement, his own attorney in so many words told the district court judge, you know, I think he probably would have withdrawn had he known the government was recommending a consecutive sentence. Up to that point in time, Godoy didn't seem to realize that that was even possible. Isn't that remarkable, given his extensive criminal history and the number of times he'd been through a court system, that he wouldn't realize at least that he faced the possibility of consecutive sentences? Well, depending. Again, he maintained throughout the sentencing proceeding that he had been told early on that the sentence would run concurrent. This was obviously weighing on his mind. It was important to him, even if he hadn't been experienced, hadn't had a criminal record and been through the system many, many times. Counsel, Judge Gould, if I can interject a question on the point you're making right now. I had the impression that we normally, in cases where IAC is claimed on direct appeal, that we normally dismiss without prejudice to the issue being raised in a habeas proceeding as to that claim. Yes. So if I'm right in that, and I think I've joined some opinions that say that certainly and may have written some, why should we not do that here? Your Honor, I believe here is one of those unusual cases where the record is sufficient. There doesn't need to be any further development of the record to allow this Court to come to the conclusion that, including comments made by Godoy's own attorney during the sentencing proceeding, that she had misread the government's sentencing memorandum. And on the third or fourth page, it was consecutive. The record seems clear, again, from the transcript. Well, the record, that's an incomplete record, though. First of all, we'll get to the point about the sentencing memorandum, which is totally after the fact. Right. And it had nothing to do with the time of the plea. But we don't have affidavit. We have conversation with the Court. And that's not the kind of record we normally would decide a case on. We, in terms of the chronology, for example, it's not clear what actually happened or what he was advised of. And the sentencing memorandum, it's pretty clear that they're talking throughout and the government is talking throughout about consecutive. There's one misprint there. But I don't see how that affects when he took the plea. So that — I'm having some trouble on this record to say we should look at ineffective assistance of counsel, because you might lose if we were to do that on an incomplete record. That's true, Your Honor. However, I brought it on appeal, direct appeal, because I thought the record was clear enough to allow relief at this level. His own attorney, again, in so many words, and the transcript is in the brief, in so many words, basically said, I thought the government's memorandum said concurrent. And that's what I told my client. And the client goes on to say, yeah, that's what you told me. And then she goes on to say, I would simply note that perhaps he would have moved to recommending a consecutive sentence. In this case, the judge did not accept the plea until sometime during the sentencing proceeding. And so — and it's clear from Godoy's statements, and his attorney does not push back at all, it's clear that he would have moved to withdraw before the sentencing proceeding even started, I mean, based upon this record. So I — But, counsel, let's just — let's say the facts are the plea is entered, the government doesn't take a position one way or the other, but the sentencing judge sends him to serve a consecutive prison term. But he says, somewhere in there, I was told it was going to be concurrent. Is that case any different than this? I think it's a little bit different because him simply saying that, I think invites a 2255 motion, because that would not be a sufficient record in my mind. But when the conversation clearly indicates that the attorney gave misadvice, affirmative misadvice, prior to the sentencing proceeding. But way after the plea. Well, way after the plea, and right. But I'm focusing just on this argument, that she was ineffective by failing to let him know before the proceeding started, because he clearly would have — he had an absolute right under 11d1 to back out. And he lost that opportunity probably because of that. Well, but, you know, the plea colloquy is pretty clear, and the plea waiver is quite clear at the time. And he wasn't promised anything, and there's no guarantee of anything. I'm having some trouble why that plea waiver isn't in effect. Well, because it was followed by misinformation about concurrency. The plea agreement said nothing about consecutive concurrent. The change of plea colloquy said nothing. It was never visited there either. The sentencing advocacy said nothing about it. That's right. So — Well, right. I mean, and — I mean, so that's why it's pretty hard to say, well, now we're after the fact, given  what it is, and they take him through the colloquy, I don't know — what do you think is your best case to be able to essentially invalidate that at this stage? If — if Godoy's attorney had properly advised him of the government's position regarding sentencing, that — that would definitely have sparked a conversation. The attorney probably would have corrected herself prior to that proceeding. What proceeding? What proceeding are you referring to now? I'm sorry. The sentencing proceeding. That's — that's this argument. There's a second argument about whether — whether the judge was wrong in denying the motion to withdraw. Right. All right. But if I'm the sentencing judge — I also have the same question Judge McEwen asked, which I don't think you answered, was what is your best case that you think supports that position? Oh, I'm sorry. I think it's United States v. Kwan, K-W-A-N, 407, Fed Third, 1005, where there was no duty to advise client of collateral consequences of conviction, affirmative misadvices, and effective assistance of counsel. And in that case, it involved an immigration — bad advice regarding the immigration consequences.  But nevertheless, the — I think the legal principle stands. All right. We'll hear from the government. Thank you. Thank you. May it please the Court, my name is Cassie Wu, and I represent the United States in this matter. The defendant knowingly and voluntarily waived his right to appeal. The plea — sorry, the Rule 11 plea colloquy was complete. The defendant at no time indicated that there were any promises outside of the plea agreement that weren't written into it, and he also acknowledged — I'm sorry — he said that there were no additional pleas, and the plea was silent as to anything regarding concurrent or consecutive. There is no indication in the record that we have before us regarding ineffective assistance of counsel, whether or not this defendant was incorrectly advised of anything. And that is why this Court should decline to apply the ineffective assistance of counsel exception to the waiver of appeal and consider this on direct appeal. This Court has indicated that issues of ineffective assistance of counsel are generally disfavored on direct appeal unless the record is sufficient. And in this case, the record is not sufficient. We know that this defendant had two defense attorneys prior to pleading guilty, and we have no idea what those defense attorneys advised him of regarding concurrent or consecutive sentences. We do know that defense counsel wrote a sentencing memorandum arguing for a concurrent sentence, which clearly acknowledged the possibility of a consecutive sentence and appears to contradict the defendant's assertion that he had no idea that his sentences could run consecutively. But again, we don't know because we have no affidavits from defense counsel. What we do know is that when the defendant said he only pleaded because he believed the sentences would run concurrent, what his attorney said was, and if an appeal is filed, I'll address with the appellate lawyer as to whether or not that's accurate. So even that statement by defense counsel suggests that she may not be agreeing with the defendant's assertion. Based on all of this, the defendant's plea was knowing and voluntary. The appellate waiver is valid, and this Court should decline to consider ineffective assistance of counsel on direct appeal, and this Court should dismiss the appeal. If the Court has no other questions for me, then I would just add those. Kennedy, thank you very much. Thank you. Although the United States argument was brief, I will give you a minute for rebuttal if you want. Very quickly, if the record shows anything on this question of whether Godoy saw his own sentencing memorandum and was put on notice, so to speak, that this could be an error, there's no evidence in the record that I could find that Godoy received or read his sentencing memorandum. Godoy insisted he was told that his sentence would, not could, run concurrently with his State court sentence. He said that on the record. And Godoy's own attorney suggested that Godoy had not seen his own sentencing memorandum when she said, yes, Your Honor, this is from the sentencing transcript, thank you. I just wanted to highlight a couple of comments that were made in my memorandum for this Court's knowledge, as well as for Mr. Godoy. Obviously, the most significant basis for our request for a downward variance in this case is Mr. Godoy's health, and she goes on to talk about that. Now, there's no reason for her to say, as well as for Mr. Godoy, if she had read that to her or if she had sent it to him, I'm sorry. And the certificate of service on her motion does not show anything going to Godoy. I think that that's pretty powerful evidence that he never saw it. He never saw that, nor did he see the government's, for the reasons I mentioned, I explained in my brief. So, counsel, if the government had recommended concurrent sentences and the judge said, I don't agree with either one of you, I'm going to sentence you to a consecutive sentence, the defendant would feel just as aggrieved, but would he have any mechanism for going forward? I don't think it solves the problem that is connected to the first claim that I argued, which I think is the best, by far, the better claim of the two claims, and that is that had he known before sentencing that what the government's recommendation would be, he would have, well, either that or known that it could run consecutive, he would have withdrawn. That doesn't make any sense. I mean, what's he going to do? Go to trial on a case where he's going to lose for sure because he doesn't like the fact that the law allows a judge to give him a consecutive sentence? I mean, it doesn't make any sense. Well, Your Honor, I can't argue with you there, but a lot of times, decisions to appeal cases don't make sense entirely. Yeah, I'm a district judge. We still try to make sense. Right. We all do, but he makes the call after we've talked about it at length. The client is the king in this situation. That's right. I agree with you on that. Thank you. Thanks, counsel. Thanks to both counsel. The case just argued, United States v. Godoy-Machuca, is submitted.
judges: McKeown, Gould, Lasnik